IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| JAMES R. LEITNER, | ) | CASE NO. 1:20-CV-01624 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

## Introduction

Before me[1] is an action under 42 U.S.C. § 405(g) by James R. Leitner seeking judical review of the 2019 decision of the Commissioner of Social Security that denied Leitner's 2017 application for disability benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative proceedings.[4]

---

[1] The parties have consented to my exercise of jurisdiction and the matter was transferred to me by United States District Judge Sara Lioi. ECF No. 16.
[2] ECF No. 1.
[3] ECF No. 12.
[4] ECF No. 13.

1

Pursuant to my initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and fact sheets.[9] The parties have met and conferred with the objective of clarifying or reducing the issues in dispute.[10] They have participated in a telephonic oral argument.[11]

For the following reasons, the decision of the Commissioner will be reversed as not supported by substantial evidence and the matter remanded.

## Facts

### *Decision of the ALJ*

Initially, by way of background, Leitner, who was born in 1984,[12] is divorced[13] and has two young daughters not living with him.[14] He has a high school education,[15] but his educational background includes home schooling due to "difficulties in staying in the school environment, particularly during his teenage years."[16] He lives in a home provided by his mother, who also supports him financially.[17] His prior employment as a

---

[5] ECF No. 7.
[6] ECF No. 14.
[7] ECF Nos. 17 (Leitner), 18 (Commissioner), 20 (Leitner reply).
[8] ECF No. 17, attachment 2 (Leitner).
[9] ECF Nos. 17, attachment 1 (Leitner), 19 (Commissioner).
[10] ECF No. 21.
[11] ECF No.
[12] Tr. at 23, 52.
[13] *Id*. at 20.
[14] *Id*. at 22, 608.
[15] *Id*. at 292.
[16] *Id*. at 613.
[17] *Id*.

depositor/brokerage clerk; mail clerk and food service manager[18] had been arranged by his former wife and ended when the marriage ended.[19] He was described by an evaluating psychologist as having "few friendships or social contacts,"[20] although his treating psychiatrist said he has a strong family support system.[21]

The ALJ found that Leitner had the following severe impairments: anxiety disorder, depressive disorder, drug addiction, alcohol addiction, and autism spectrum disorder.[22] In addition, the ALJ concluded that Leitner does not have an impairment or combination of impairments that met or medically equaled a listing.[23] To that point, the ALJ specifically considered Listing 12.4 (depressive, bipolar and related disorders), Listing 12.06 (anxiety and obsessive-compulsive disorders), and Listing 12.10 (autism spectrum disorder).[24]

In particular, he first considered the "B" criteria of all three listings, which are identical,[25] and found that Leitner had mild limitations in the area of understanding, remembering and applying information, while having moderate limitations in the areas of: (1) interacting with others; (2) concentrating, persisting and maintaining pace; and (3)

---

[18] *Id.* at 47, 320.
[19] *Id.* at 613.
[20] *Id.*
[21] *Id.* at 545.
[22] *Id.* at 17.
[23] *Id.* at 18.
[24] *Id.*
[25] *Mutz v. Comm'r of Soc. Sec.*, 2019 WL 7586875, at *5 (E.D. Mich., Sept. 16, 2019), report and recommendation adopted *Murtz v. Comm'r of Soc. Sec.* 2019 WL 5677671 (E.D. Mich., Oct. 31, 2019).

adapting or managing oneself.[26] As to the "C" criteria, the ALJ determined that this was not met because Leitner has successfully displayed more than a minimal ability to adapt to changes in his environment despite his mental disorders.[27]

The ALJ then found that Leitner had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations: can understand, remember and carry out short-cycle instructions in a routine work setting with changes that are easily explained; can respond appropriately to supervisors, co-workers and work situations if the tasks performed are goal-oriented, but not at production rate pace, the occupation does not require more than superficial interaction, meaning that the worker function of the occupation in relation to people is limited to "Taking Instructions-Helping" as this is defined in the SCO, and the occupation does not require interaction with the public.[28]

In formulating this RFC, the ALJ first discounted Leitner's own testimony about his symptoms and limitations as being not entirely consistent with the medical and other evidence.[29] He specifically noted that while Leitner alleged having panic attacks several times per month, he did not report any panic attacks in therapy.[30] Further, he observed that

---

[26] Tr. at 18.
[27] *Id*. at 18-19.
[28] *Id*. at 19.
[29] *Id*. at 20.
[30] *Id*.

4

Leitner "showed general improvement in his ability to socialize and leave the house while under treatment."[31]

In addition, the ALJ also stated that in October 2016, Leitner indicated that he was able to go to some stores by himself, had been drinking less, and his depression and anxiety were both improved on medication.[32] Moreover, the ALJ stated that a November 2017 note from Dr. Messerly at the Nord Center showed that Leitner's mother had reported "several positive changes," including that Leitner was showing more emotion, was willing to leave the house more, contacted a friend and went to the gym on his own.[33]

Later notes from the Nord Center showed:

(1)    Leitner pursing a job opportunity (January 2018);

(2)    improvement with depression such that Leitner was planning on doing events with his mother on a regular basis (February 2018);

(3)    March and April 2018 Leitner was having suicidal ideation and difficulty with motivation, but those things were addressed in therapy and Leitner indicated he wanted to return to work;

(4)    June 2018 Leitner "unable to respond to questions about relationships and emotions;" his score on tests for cognitive ability and general intellectual ability was above

---

[31] *Id*.
[32] *Id*.
[33] *Id*. at 20.

average, while his score on adaptive behavior test was low range; also tested as meeting the diagnostic criteria for autism spectrum disorder;

(5) August 2018 Leitner reported as less irritable, had better energy, and was more engaged;

(6) September 2018 Leitner continued to express fear of going outside and feelings that everyone was watching him.[34]

As to opinion evidence, the ALJ noted the reports from state agency psychological consultants Kristen Haskins, Psy.D., on May 30, 2017 and Karla Delcour, Ph.D. on August 1, 2017.[35] The ALJ observed that both opinions found Leitner had mild limitations in the area of understanding, applying and remembering information, while having moderate limitations in the other three "B" criteria.[36] In addition, the state agency consultants opined that Leitner could sustain attention, concentration persistence and pace to perform routine tasks; could interact briefly and occasionally with the public; and can work in a fairly static work environment where changes are easily explained and there are no strict time limitations or production standards.[37] The ALJ then gave "this" opinion[38] great weight.[39]

---

[34] *Id*. at 21.
[35] *Id*.
[36] *Id*.
[37] *Id*.
[38] Although the ALJ employs the singular, all prior references were to both opinions.
[39] *Id.*

6

The ALJ then addressed a June 16, 2017 "to whom it may concern" letter[40] from Dr. Margaret Messerly, M.D., a treating physician, as well as another "to whom it may concern" letter by Dr. Messerly dated April 10, 2018.[41] In addition, Dr. Messerly provided another "to whom it may concern" letter[42] and medical source statement[43] both dated November 1, 2017 and another medical source statement from June 25, 2018.[44]

The ALJ gave these opinions partial weight, stating that they are not fully supported by the record.[45] To that point, the ALJ cited as contrary evidence Leitner's "superior" 2017 IQ test score and portions of the exam notes from December 2017, January 2018, February 2018 and August 2018 that record Leitner as regularly gaming with a friend, pursuing a work from home job opportunity, planning regular events with his mother, and having more energy.[46]

Finally, the ALJ considered a November 13, 2018 opinion from Elizabeth Holmes. Ph.D., a psychological evaluator.[47] In a brief paragraph, the ALJ assigned partial weight to Dr. Holmes 'opinion, finding that it was "vague" and lacking definition as to one term that

---

[40] *Id.* at 513.
[41] *Id.* at 548.
[42] *Id.* at 545.
[43] *Id.* at 546-47.
[44] *Id.* at 549-550.
[45] *Id.* at 22.
[46] *Id.*
[47] *Id.*

7

was used.[48] The AKL did find that Dr. Holmes 'opinion "does support that [Leitner] has some limitations in working," which he later implies are addressed in the RFC.[49]

The ALJ then found, with the testimony of a vocational expert (VE), that Leitner could perform his past relevant work as a mail clerk within the limits of the RFC.[50] Alternatively, the ALJ found that Leitner could perform the duties of Kitchen Helper, Laundry Worker and Industrial Cleaner, and that sufficient jobs exist in the national economy in these areas.[51]

Thus, Leitner was found not disabled.[52]

***Issue on Judicial Review***

Leitner presents a single issue for judicial review:

Whether the administrative law judge erred in his evaluation of [the] treating psychiatrist['s] opinion where he expressly considered only whether the opinion deserved controlling weight and he did not address whether the opinion still deserved significant weight under the regulatory factors described in the regulations?[53]

**Analysis**

***Standards of Review***

---

[48] *Id.*
[49] *Id.* at 22-23.
[50] *Id.* at 23.
[51] *Id.* at 23-24.
[52] *Id.* at 24.
[53] ECF No. 17 at 1.

8

This matter is considered initially under the well-established substantial evidence standard, which need not be restated here. Further, the medial opinion evidence is reviewed under the former treating source/good reasons rubric that was fully explained in *Gayheart v. Commissioner of Social Security.*[54]

*Application of Standards*

As Leitner observes in framing the issue here, the question is whether the ALJ analyzed and weighed the opinion of Dr. Messerly in conformity with the requirements articulated by *Gayheart*. That analysis, in turn, must be viewed together with the fact that while the ALJ gave only partial weight to three treating source opinions that are from a later time than those of the two state agency sources – opinions that the state agency sources never saw[55] - the ALJ was also correct in giving the earlier and purely reviewing sources great weight.

The *Gayheart* case authority is not always clear as to when and how the earlier opinion of a non-treating source may receive greater weight than a later opinion of a treating source.[56] While generally the rule is that opinions of non-examining sources may

---

[54] 710 F.3d 365 (6th Cir. 2013).
[55] Specifically, the letter and medical source statement dated November 1, 2017 (tr. at 545-47); the letter of April 10, 2018 (*id*. at 548) and the second medical source statement dated June 25, 2018 (*id*. at 549-50). In addition to these opinions of Dr. Messerly that were not seen by the state agency reviewers, there is the highly detailed seven-page opinion of Dr. Holmes, the psychological evaluator, that was issued on November 13, 2018, making it the last report in the record. *Id*. at 608-15.
[56] My own experience in *Lane v. Commissioner*, 2020 WL 2190474 (N.D. Ohio Feb. 19, 2020) is illustrative. In *Lane*, the Commissioner eventually prevailed in claiming that the

9

receive greater weight than the opinion of a treating or examining source when the opinion of the non-examining source is based on a review of the entire record,[57] it is also true that the earlier opinion of a reviewing source may yet receive greater weight than that of a later examining source provided that the ALJ gives some indication that he/she considered the fact that the earlier opinion reviewed a less than complete record.[58] *Gibbens* somewhat put a gloss on that rule by finding that the ALJ can give that "indication" by himself reviewing the entire record and finding support therein for the weight eventually assigned.[59]

In this case, the ALJ plainly did not directly acknowledge that the opinions of the state agency consultants were based on a less than complete record. But arguably the ALJ himself performed the function, in the manner suggested by *Gibbens*, of reviewing the entire record as part of the decision to assign less weight to the opinion of Dr. Messerly. The notations by the ALJ to positive clinical notes from Dr. Messerly from a period after the state agency reviewers submitted their opinions may be enough to show that the greater weight given to the state agency opinions took into account at least some of Dr. Messerly's clinical notes from that period which was not before the state agency reviewers.

---

ALJ had adequately explained why the opinion of a non-examining source was given greater weight than that of an examining one by pointing to the Sixth Circuit's holding in *Gibbens v. Commissioner*, 659 Fed. Appx. 238 (6th Cir. 2016). *Gibbens* holds that an ALJ meets the requirement of considering the complete record before giving greater weight to a non-treating opinion that did not review the entire record when the ALJ's "own analysis clearly spanned the entire record." *Id*. at 248.
[57] *Miller v. Commissioner*, 811 F.3d 825, 834 (6th Cir. 2016).
[58] *Id*.
[59] *Gibbens*, 659 Fed. Appx. at 247-48.

That said, the few notes cited by the ALJ do not directly address some of the key functional findings by Dr. Messerly, such as her opinion in June 2018 that Leitner would be off task 15 to 20 percent of the time and absent three days per month.[60] Clearly, the notes that Leitner is planning regular social outings of unspecified duration with his mother or is feeling "less irritable" do not undercut a treating source opinion that Leitner will have significant time off task at work and/or regularly be absent.

Of equal importance, the brief analysis of the last medical opinion in the record – that of Dr. Holmes in November 2018 – is particularly deficient. As noted, Dr. Holmes provided a very detailed review of Leitner's performance on highly specific tests. While the ALJ points to Leitner's relatively high cognitive skills[61] and the fact that Leitner's scores on autism testing were "above the cutoff,"[62] he ignores the fact that Dr. Holmes, who administered the test, immediately went on to say that the "scores were more problematic than cutoff in communication and reciprocal social interaction."[63] Moreover, just after diagnosing Leitner with autism spectrum disorder, Dr. Holmes concluded that Leitner would be classified as "Severity Level One of ASD: requiring support. He would require a considerable amount of assistance in obtaining and maintaining employment."[64]

---

[60] Tr. at 550.
[61] *Id.* at 21.
[62] *Id.*
[63] *Id.* at 613.
[64] *Id.* at 614.

11

The ALJ's comment here is to fault Dr. Holmes for not defining "considerable assistance."[65] Yet the "considerable assistance," used in the conclusory paragraph, is what Dr. Holmes assessed is required to help Leitner overcome low or moderately low levels of function in twelve specific, separate areas behavior.[66] Surely those courts and the Commissioner that frequently assert that a record should be read holistically[67] can accept that the same rule applies to reading the whole opinion as a means to understanding the concluding paragraph.

In sum, even though it may be possible (though not decided here) that the ALJ sufficiently reviewed "the entire record" by citing a few brief portions of Dr. Messerly's notes from the period after the state agency opinions were issued in order to support giving her treating source opinion lesser weight than that of the state agency reviewers, the ALJ clearly erred in giving only partial weight to the consulting opinion of Dr. Holmes and supporting that decision with a few references to its vagueness and the lack of definition of one phrase in the conclusion.

## Conclusion

Therefore, I find that the decision of the Commissioner is not supported by substantial evidence and so is reversed. The matter is remanded for further proceedings consistent with this opinion.

---

[65] *Id*. at 22.
[66] Id. at 611-12.
[67] See, *Fink v. Comm'r of Soc. Sec.*, 2014 WL 4809457, at *5 (N.D. Ohio Sept. 26, 2014).

IT IS SO ORDERED.

Dated: March 30, 2022                                          s/William H. Baughman Jr.
                                                               United States Magistrate Judge